UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

SB1708 REALTY, LLC,

Plaintiff,

**MEMORANDUM & ORDER**
22-CV-959(EK)(PK)

-against-

NICOLE ALLEN, TANISHA ALLEN, CARLOS NICHOLLS, et al.,

Defendants.

------------------------------------x

ERIC KOMITEE, United States District Judge:

Plaintiff SB1708 Realty, LLC, brought this action to foreclose on a property located at 907 Thomas S. Boyland Street in Brooklyn. Plaintiff alleges that defendant Nicole Allen defaulted on a $150,000 loan that was secured by a mortgage against the Boyland property. In addition to Allen, plaintiff named as defendants Allen's sister and brother-in-law, the property's two co-owners.

The parties have now cross-moved for summary judgment. For the reasons set forth below, SB1708's motion is granted, and defendants' cross-motion is denied.

## I. Background

The following facts are drawn from the parties' Local Rule 56.1 statements and the exhibits appended to their summary judgment papers. The parties did not, however, submit Counter Rule 56.1 Statements, as Local Rule 56.1 requires. Local Rule

56.1(b) of the Local Civil Rules of the Eastern District of New York; *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001). Although "uncontested assertions" are "deemed [] admitted," the Court must review the record independently and credit only those assertions the record supports. *Holtz*, 258 F.3d at 73-74.

Nicole Allen co-owns the house located on 907 Thomas S. Boyland Street (the "Boyland property") with her sister, Tanisha Allen, and brother-in-law, Carlos Nicholls. Defs.' Local Rule 56.1 Statement of Material Facts ("Defs.' Rule 56.1") ¶ 1, ECF No. 88-6; *see* Amended Compl. ("Compl.") ¶ 5, ECF No. 45.

In early October 2019, Allen approached a person named Christopher McElroy to obtain a loan to cover the property's maintenance costs. Decl. of Nicole Allen ("Allen Decl.") ¶ 4, ECF No. 88-6; Defs.' Rule 56.1 ¶ 2. McElroy, who is not a party here, connected Allen with PJT Lending, Inc. ("PJT"), also a non-party. Allen Decl. ¶ 4. PJT approved Allen for a $150,000 loan. Allen Decl. ¶ 4; Defs.' Rule 56.1 ¶¶ 1-2. The summary judgment record provides no further information concerning McElroy's identity or his relationship to Allen or PJT. Defs.' Rule 56.1; Pl.'s Local Rule 56.1 Statement of Material Facts ("Pl.'s Rule 56.1"), ECF No. 89-1.

On October 17, 2019, Allen attended the loan's closing at the office of PJT's attorney, Craig Fine. Allen Decl. ¶ 5. The loan agreement provided that PJT would lend Allen $150,000 at an annual interest rate of twelve percent. Defs.' Rule 56.1 ¶ 2; *see* Pl.'s Ex. B, Note 1, ECF No. 89-6; Pl.'s Ex. C, Mortgage, ECF No. 89-7.[1] The agreement required Allen to make monthly interest payments starting on December 1, 2019, with the unpaid principal due on November 1, 2020 — just over twelve months after the loan's effective date. Defs.' Rule 56.1 ¶ 2; Note 1. A mortgage on the Boyland property secured Allen's obligation. Mortgage 1.

A few days before the closing, PJT issued a check to the "Law Office of Craig A. Fine" for $150,000, the loan's face value. Defs.' Ex. C, Craig Fine Accounting Report ("Fine Accounting Report") 3, ECF No. 87-5. On the day of the closing, Fine distributed the loan's principal to Allen, less certain fees and other deductions. *Id.*; *see* Decl. of Defs.' Counsel Mark S. Anderson ("Anderson Decl.") ¶ 4, ECF No. 87-2. Specifically, Fine distributed two fees to himself: $2,500 as an "Attorney Fee" and $1,500 as an "Origination Fee." Fine

[1] Unless otherwise noted, page numbers in citations refer to internal, rather than ECF, pagination.

Accounting Report 1; Defs.' Rule 56.1 ¶ 5. He also distributed $4,500 to McElroy as an "Origination Fee"; $9,739.80 to PJT for an "advanced interest" payment; and several other deductions, including "Title Charges" to Bentley Abstract. Fine Accounting Report 1; Defs.' Rule 56.1 ¶ 5; Allen Decl. ¶¶ 9-10. He then remitted the remaining principal — $123,520.42 — to Allen. Fine Accounting Report 1.

Allen failed to make the first payment due on December 1, 2019, thus defaulting. Pl.'s Rule 56.1 ¶¶ 6-7. Thereafter, she failed to make any subsequent payments. *Id.* ¶ 7.

On June 1, 2021, PJT assigned the mortgage to SB1708 Realty, LLC ("SB1708") pursuant to a written assignment. Pl.'s Rule 56.1 ¶ 9; Pl.'s Ex. D, Assignment of Mortgage 2, ECF No. 89-8. According to Igor Buzhaker, SB1708's principal and sole member, SB1708 purchased the mortgage for approximately $165,000. Affidavit of Igor Buzhaker ("Buzhaker Aff.") ¶¶ 1, 17, ECF No. 89-16; Supplemental Affidavit of Igor Buzhaker ("Buzhaker Supplemental Aff."), ¶¶ 5-6, ECF No. 92-1; Pl.'s Rule 56.1 ¶ 9. Two weeks later, SB1708 informed Allen of the assignment by letter. Buzhaker Aff. ¶ 20; Pl.'s Rule 56.1 ¶ 10.

On August 27 of that year, SB1708 sent Allen a pre-foreclosure notice advising her that she was in default and requesting that she "take immediate steps" to avoid foreclosure,

including by arranging to make payment. Pl.'s Ex. F, Notice of Foreclosure 1-3, ECF No. 89-10. The notice also stated that if she failed to take "any action[] to resolve this matter within 90 days," plaintiff "may commence" foreclosure proceedings. *Id.*; Buzhaker Aff. ¶¶ 21-22; Pl.'s Rule 56.1 ¶ 11; *see* N.Y. Real Prop. Acts Law § 1304 (McKinney) (requiring ninety days' notice before foreclosure for mortgages securing home loans).

Allen did not respond to the notice or otherwise take action to avoid foreclosure. Pl.'s Rule 56.1 ¶ 13. SB1708 commenced the instant action in February 2022. Pl.'s Rule 56.1 ¶ 14; Compl. ¶¶ 20-21.

## II. Legal Standard

Summary judgment is appropriate when there is no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).[2] And "[a] fact is material if it might affect the outcome of the suit under the governing law." *Id.*

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

When resolving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017). The movant bears the burden of showing that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the non-movant would bear the burden of persuasion on a given issue at trial, the movant can satisfy its burden of production either by "submitting evidence that negates an essential element of the non-moving party's claim," or "demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

If the movant carries its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). If the nonmoving party fails to do so, the Court should grant summary judgment. In performing this analysis, the Court resolves all ambiguities and draws all inferences in favor of the nonmoving party. *E.g., Gallo v.*

*Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

## III. Discussion

### A. The Court Has Jurisdiction

SB1708 invokes this Court's diversity jurisdiction. Compl. ¶ 7. For diversity jurisdiction to obtain, complete diversity must exist between the parties. 28 U.S.C. § 1332(a); *see Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-103 (2d Cir. 1997). Because the complaint did not adequately allege the parties' states of citizenship, the Court directed plaintiff to show cause why the Court has jurisdiction. Dkt. Order dated August 13, 2026; *see Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

Plaintiff's response satisfies the Court that it has jurisdiction over the action. *See* Response to O.S.C., ECF No. 92. An LLC's citizenship is determined by the citizenship of each of its members. *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). SB1708's only member, Buzhaker, is domiciled in Florida; SB1708 is thus a citizen of Florida. Buzhaker Supplemental Aff. And all three individual defendants are domiciled in New York, Response to O.S.C. 1-2, and are thus citizens of New York. *See Canedy*, 126 F.3d at 103.

### B. SB1708 Has Established Its Right to Foreclose

The parties do not dispute that New York law governs. Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Mem.") 6, ECF No. 89-14; Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 16, ECF No. 89-2. When the "parties' briefs assume that New York law controls . . . such implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

To establish a *prima facie* case for foreclosure under New York law, a plaintiff must prove (1) the existence of a mortgage and note, (2) ownership of the mortgage, and (3) the borrower's default. *Campaign v. Barba*, 805 N.Y.S.2d 86, 86 (App. Div. 2d Dep't 2005); *see R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997). Plaintiff has established each element.

***Existence of the Note and Mortgage.*** The parties do not dispute that Allen executed both the Note and Mortgage. Pl.'s Rule 56.1 ¶¶ 4-5; Defs.' Rule 56.1 ¶¶ 4-5. SB1708 has submitted both documents, which suffices on summary judgment. *See, e.g.*, *Yusubov v. Zoya AB Mgmt., LLC*, No. 20-CV-3913, 2023 WL 6308074, at *4 (E.D.N.Y. Sept. 28, 2023).

Defendants argue, however, that SB1708 has "failed to establish a proper [ ] foundation" for both documents under the

Federal Rules of Evidence. Defs.' Mem. 3. Defendants contend that Buzhaker's affidavit, which describes SB1708's recordkeeping practices with respect to the loan documents, "is inadmissible hearsay . . . that fails to lay a proper foundation for the admissibility of the records attached to it." *Id.* at 8.

That argument is unavailing. Defendants concede that Allen executed both the Note and Mortgage, and they do not contest the documents' authenticity. Defs.' Rule 56.1 ¶¶ 3-5. In any case, if documents "will be presented in an admissible form at trial," the court may consider them on summary judgment. *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam). Under Federal Rule of Evidence 803(6)'s business records exception, the court may admit records created by another entity if a witness testifies "that the records are integrated into a company's records and relied upon in its day-to-day operations." *Matter of Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981).

Here, Buzhaker attests that he is "fully familiar with SB1708's record keeping practices"; that SB1708's business records "include records associated with" Allen's loan, including the Note and Mortgage; and that such records "are maintained in the course of Plaintiff's regularly conducted business activities." Buzhaker Aff. ¶¶ 1-2. Such statements

provide sufficient grounds to admit the Note and Mortgage pursuant to the business records exception, and the Court may thus consider them at this stage, absent any authenticity challenge. *E.g.*, *Wells Fargo Bank v. Prince 26, LLC*, No. 22-CV-5586, 2023 WL 5152420, at *6 (S.D.N.Y. Aug. 10, 2023); *see Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017).

***SB1708's Ownership of the Mortgage.*** The undisputed record also establishes that SB1708 owns the mortgage. A written assignment that specifies plaintiff as the assignee can establish ownership. *E.g.*, *Freedom Mortg. Corp. v. Petriello*, No. 22-CV-7310, 2025 WL 1726320, at *9 (E.D.N.Y. June 20, 2025). SB1708 has submitted the written Assignment of Mortgage: it shows that PJT assigned the mortgage to SB1708 on June 1, 2021, about eight months before SB1708 commenced this action. Assignment of Mortgage 2. Defendants have offered no evidence to the contrary.

***Allen's Default.*** Finally, the record leaves no doubt that Allen defaulted. On summary judgment, a plaintiff may establish default "in the form of an affidavit of a person with knowledge." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 79 (E.D.N.Y. 2019). Buzhaker attests that he is "fully familiar" with SB1708's documents, including the Note, Mortgage, and Assignment. Buzhaker Aff. ¶¶ 2, 17. He attests further that,

based on his review of those records, Allen failed to make any of the required payments. *Id.* ¶¶ 2, 14-15.

Accordingly, SB1708 has established a *prima facie* case for foreclosure. *See Yusubov*, 2023 WL 6308074, at *4.

**C. Defendants Have Failed to Raise an Issue of Fact on the Affirmative Defense of Usury**

Once plaintiff establishes its *prima facie* case, the burden shifts to the borrower to make "an affirmative showing that a defense to the action exists." *Gustavia Home*, 362 F. Supp. 3d at 80 (applying New York law). The court should deny summary judgment if there are issues of material fact concerning an affirmative defense. *Disability Advocs., Inc. v. Paterson,* 598 F. Supp. 2d 289, 295 (E.D.N.Y. 2009). But if defendants come forward with insufficient evidence to support an essential element of a defense, with respect to that defense, "there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the defendant's affirmative defense necessarily renders all other facts immaterial." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54-55 (2d Cir. 1994).

Defendants press one affirmative defense: usury. They argue that the loan's stated interest rate of twelve percent is an "illusory lawful interest rate" because the disbursements

"paid out at the closing were for the benefit of the lender and constitute additional interest for the purposes of usury." Defs.' Mem. 7-8; Defs.' Mem. in Supp. of Mot. for Summ. J. 6, ECF No. 88-6.

1. New York's Usury Prohibition Applies

Under New York's civil usury statute, a loan for less than $250,000 is void if its interest rate exceeds sixteen percent per year. N.Y. Gen. Oblig. Law § 5-501(1), (6)(a); *id.* § 5-511(1); *see Ammirato v. Duraclean Int'l, Inc.*, 687 F. Supp. 2d 210, 220 (E.D.N.Y. 2010). Only natural persons may assert the defense, N.Y. Gen. Oblig. Law § 5-521(1), and they may assert it against both the lender and the loan's assignee. *See Butts v. Samuel*, 174 N.Y.S. 2d 325, 326 (App. Div. 2d Dep't 1958). Here, Allen took out a $150,000 loan, and SB1708 holds the mortgage as an assignee. Pl.'s Rule 56.1 ¶¶ 4-9; Defs.' Rule 56.1 ¶ 2. Accordingly, defendants may assert the usury defense.

2. Defendants Have Offered Insufficient Evidence That the Disbursements at the Loan's Closing Qualify as Interest

Defendants argue that three fees that Fine disbursed at the closing — Fine's attorneys' and origination fees, and McElroy's origination fee — must be treated as interest, because those fees were for the "benefit of" the lender. Defs.' Mem. 7-

8. Defendants argue further that the $9,739.80 Fine paid to PJT as an "advanced payment" also counts as interest. *Id.* at 9. SB1708 does not dispute that the loan's effective rate would exceed sixteen percent if these deductions were treated as interest. Pl.'s Mem. 18. Plaintiff instead argues that the fees to Fine and McElroy were "broker payments or charges unrelated to the lender that are not considered part of the interest calculation." *Id.* at 20. It did not respond to the defendant's argument concerning the advanced interest payment. *See id.*

"Usury is an affirmative defense and the party seeking to void the loan agreement bears the burden of proving usury." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 335-36 (2021). The "defense must be established by clear evidence as to all the elements essential thereto," and the court "will not assume that the parties entered into an unlawful agreement." *Giventer v. Arnow*, 37 N.Y.2d 305, 309 (1975); *see Freitas v. Geddes Sav. & Loan Ass'n*, 63 N.Y.2d 254, 265 (1984). A borrower must show: (1) a loan that (2) requires the principal to be repaid and (3) charges interest greater than that allowed by statute, and (4) intent to violate the usury statutes. *Adar Bays*, 37 N.Y.3d at 335-36.

The parties here dispute only the third and fourth

elements. Pl.'s Mem. 18-20; Defs.' Mem. 6-13. Because defendants have offered insufficient evidence to support the third element, we need not address the fourth. *See Giammettei*, 34 F.3d at 55.

To calculate a loan's effective interest rate, the Court must determine whether fees the borrower paid in connection with the loan should count as interest. *Band Realty Co. v. N. Brewster, Inc.*, 37 N.Y.2d 460, 463 (1975). Specifically,

> the true annual interest rate is determined by taking the "discount" — the difference between the amount advanced to the borrower and the amount owed to the lender — dividing that amount by the number of years in the term of the loan, adding that amount to the interest rate stated on the note, and dividing this sum by the difference between the principal and the discount (i.e., the net advance).[3]

*AKF, Inc. v. Haven Transp. Bus. Sols., Inc.*, No. 22-CV-269, 2024 WL 2941746, at *8 (N.D.N.Y. June 11, 2024).

Not all payments to the lender are treated as "discounts." New York law provides that "interest shall include any and all amounts paid or payable, directly or indirectly . . . *to or for the account of the lender in consideration for*

[3] The Note's stated interest rate of 12% required Allen to pay $18,000 in total interest (12% of $150,000) over a one-year term. Note 2. If Fine's $2,500 attorneys' fee and McElroy's $4,500 origination fee were included as "discounts," the effective interest rate would be calculated as: ($18,000 in stated interest + $7,000 in discounts) / ($150,000 - $7,000)= 17.48%.

making the loan or forbearance." N.Y. Gen. Oblig. Law § 5-501(2) (emphasis added). However, a borrower "may pay *reasonable expenses attendant on* a loan without rendering [it] usurious." *Lloyd Cap. Corp. v. Henchar, Inc.*, 80 N.Y.2d 124, 127 (1992) (emphasis added again). "Reasonable expenses can include payments for attorneys' fees associated with the loan"; such expenses do not count as interest. *Hillair Cap. Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) (citing *Lloyd Cap. Corp.*, 80 N.Y.2d at 127); *see also Brown v. Robinson,* 224 N.Y. 301, 314 (1918) (borrower may deduct "actual expenses incurred in making the loan"). In contrast, "when fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are a disguised loan payment, then such fee expenses can be considered in determining the interest rate." *Hillair*, 963 F. Supp. 2d at 339; *see London Realty Co. v. Riordan*, 207 N.Y. 264, 266 (1913).

***The Loan's Stated Interest Rate Is Not Usurious.***

The parties do not dispute that the loan's *stated* interest rate is twelve percent, below the civil usury cap. Defs.' Mem. 7; Pl.'s Mem. 19. "Where the rate of interest on the face of the note . . . is not in excess of the legal rate," *Freitas*, 63 N.Y.2d at 264, the loan agreement is "*prima facie* . . . not

usurious." *Min Cap. Corp. Ret. Tr. v. Pavlin,* 930 N.Y.S.2d 475, 475-76 (App. Div. 2d Dep't 2011).

***Fine's Attorney's Fee and Origination Fee.*** Defendants argue that Fine's attorney's fee and origination fee must count as interest because the fees accrued to the "benefit of the lender." Defs.' Mem. 8-9. As evidence, defendants offer Allen's attestation that Fine served as PJT's attorney and that she "ha[s] been told by [her] attorney" that the fee was "paid . . . to the benefit of the lender." Allen Decl. ¶ 7; Defs.' Rule 56.1 ¶ 6.

To raise a dispute of fact as to whether fees should qualify as interest, a borrower must proffer evidence that the fees were not reasonable expenses incurred in connection with the loan. *Lloyd Cap. Corp.*, 80 N.Y.2d at 127. In *LG Capital Funding, LLC v. PositiveID Corporation*, defendants argued that two fees paid to the lender's attorney — an attorneys' fee and an origination fee — should be treated as interest because the lender's attorney used the same "deal documents" he had used in prior transactions with the defendant. No. 17-CV-1297, 2019 WL 3437973, at *10 (E.D.N.Y. July 29, 2019), *report and recommendation adopted*, 2019 WL 4564882 (E.D.N.Y. Sept. 20, 2019). That assertion, however, failed to "show the expenses were not legitimately incurred by LG or its attorney."

*PositiveID Corp.*, 2019 WL 3437973, at *10. As in *PositiveID Corp.*, that explanation is "speculative, conclusory, and not sufficient to put in dispute" the question of whether the attorney's fees and origination fee "were actual expenses of the loan." *Id.* Moreover, it is no secret that attorneys reuse documents from prior transactions as a matter of course; that fact does not, in itself, render the fees less-than-legitimate.

Similarly, in *Adar Bays, LLC v. GeneSYS ID, Inc.*, the borrower's declaration that the lender charged a "purported attorneys' fee" constituted insufficient "evidence that the $2,000 fee did not legitimately reimburse" the lender's attorney. 341 F. Supp. 3d 339, 354 (S.D.N.Y. 2018), *vacated and remanded on other grounds*, 28 F.4th 379 (2d Cir. 2022).

As in those cases, defendants have offered insufficient evidence to raise a question of material fact as to whether Fine's two fees were disguised interest.

Allen attests that "I have been told by my current attorney" that Fine's fees were for the "benefit of the lender." Allen Decl. ¶ 7.[4] Assuming that assertion were admissible, it

[4] In addition to the substantive issues discussed above, Allen's statement is inadmissible hearsay because it relays her attorney's out-of-court statement for its truth. Fed. R. Evid. 801, 802. And "an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004).

does not address the relevant issue: New York law instructs the Court to assess whether the fees "reimburse[d] [the] lender[] for expenses associated with the loan," *Hillair*, 963 F. Supp. 2d at 339 (citing *Lloyd Cap. Corp.*, 80 N.Y.2d at 127), not whether they "benefited the lender." *See PositiveID Corp.*, 2019 WL 3437973, at *10. Fees that reimburse the lender (or its agents) for services rendered will always "benefit" the lender in a general sense, but that fact does not, without more, render them "disguised" interest payments under New York law. *Id.*

Nor does Allen's account of the closing provide sufficient evidence from which a factfinder could conclude that Fine's fees were not reasonable loan expenses. She attests only that she attended the closing at Fine's office, and that Fine prepared the Note and Mortgage. Allen Decl. ¶¶ 5-6. That attestation provides no basis from which to conclude that Fine's fees reimbursed anything other than legal services associated with the loan. *See PositiveID Corp.*, 2019 WL 3437973, at *10. And defendants proffer no other evidence to raise a genuine dispute of fact as to whether Fine's fees were reasonable. Def.'s Rule 56.1; *see Adar Bays, LLC*, 341 F. Supp. 3d at 354.

***McElroy's Origination Fee.*** For substantially the same reasons, defendants have failed to offer evidence from which a reasonable factfinder could conclude that McElroy's origination

fee did not compensate legitimate loan services.

As with Fine's fees, Allen attests that she "ha[s] been told by [her] attorney" that McElroy's fee was paid "for the benefit of the lender." Allen Decl. ¶ 7. This is, again, a legal conclusion. Allen attests further that she "never requested that payment be made to [McElroy]." *Id.* ¶ 8. As with the attorney's fee, above, Allen's statement that McElroy's fee was "for the benefit" of the lender does not answer the question of whether it compensated legitimate loan expenses. *See Adar Bays*, 341 F. Supp. 3d at 354.

A "finder's fee" is not a discount if it compensates legitimate loan services, such as providing "advice and assistance" in identifying a lender. *Feinberg v. Old Vestal Rd. Assocs., Inc.*, 550 N.Y.S.2d 482, 484 (App. Div. 3d Dep't 1990); *see Zanfini v. Chandler*, 197 A.D.3d 594, 595, 153 N.Y.S.3d 77 (App. Div. 2d Dep't 2021) ("mortgage broker's commission" for facilitating loan not a discount).[5] Here, Allen's declaration provides no basis from which a reasonable jury could conclude that McElroy failed to provide such services. Allen Decl. ¶¶ 4-

[5] Under the New York Codes, Rules, and Regulations, interest "include[s] origination fees" for mortgages encumbering residences "occupied by the owner." N.Y. Comp. Codes R. & Regs. tit. 3, § 4.2(a). That provision is inapplicable here because Allen does not reside at the Boyland property. *See* Note 2 (listing Allen's address).

5. To the contrary, her only account of McElroy's role is that he facilitated the loan by connecting her with PJT after she approached him. *Id.*; *see Feinberg*, 550 N.Y.S.2d at 484. And defendants have pointed to no other evidence from which a jury could conclude that his fee was unreasonable or illegitimate. *See* Defs.' Rule 56.1.

***Advanced Interest Payment.*** Defendants finally argue that the advanced interest payment Fine issued to PJT should count as a discount. Defs.' Mem. 9-10. They point to Allen's attestation that "$9,739.80 was . . . paid directly to the Lender as an advanced payment." Allen Decl. ¶ 9.

"Interest on the whole amount of principal agreed to be paid at maturity, not exceeding the legal rate, may be taken in advance." *Band Realty Co.*, 37 N.Y.2d at 463-64. When interest is paid in advance, a loan is not usurious "so long as *all payments* on account of interest d[o] not aggregate a sum greater than the aggregate of interest that could lawfully have been earned . . . ." *Id.* at 465 (emphasis added). Furthermore, an advanced interest payment does not qualify as a "discount" if it is credited against the total interest due. *Martell v. Drake*, 2 N.Y.S.3d 288, 288 (App. Div. 3d Dep't 2015); *see Ludlum Corp. Pension Plan Tr. v. Matty's Superservice, Inc.*, 548 N.Y.S.2d 292, 293 (App. Div. 2d Dep't 1989).

Against this backdrop, Allen has adduced insufficient evidence to create a genuine issue of fact on the question of whether the advanced payment should be considered a discount. To begin, the amount of advanced interest Fine remitted to PJT — $9,739.80 — represents just over half the total interest due under the loan's stated twelve percent rate. Defs.' Rule 56.1 ¶¶ 2-5; Fine Accounting Report 1. Because that figure does not exceed the total interest that could lawfully be charged, its prepayment does not violate the usury statute in itself. *Band Realty Co.*, 37 N.Y.2d at 465; *Martell*, 2 N.Y.S.3d at 288.

Instead, the advanced interest payment will be regarded as a discount only to the extent it came *in addition to*, rather than as an advance on, the twelve percent total that the parties agreed on. And Allen simply does not provide the evidence that would be needed to draw that conclusion. Allen attests only that she paid that amount as "advanced interest," not that she paid it in addition to the $18,000 charged under the twelve percent rate. Allen Decl. ¶¶ 9-10. Allen has pointed to no evidence indicating, one way or the other, what interest payments she was charged *after* the advance payment, such that a jury could calculate the total interest assessed over the life of the loan. Defs.' Rule 56.1; Anderson Decl.; Allen Decl. On this record, no reasonable factfinder could

conclude that the advanced interest payment should be included as a "discount." *See Martell*, 2 N.Y.S.3d at 288.

Accordingly, defendants' usury defense fails as a matter of law.

**D. Plaintiff Is Entitled to Attorneys' Fees and Costs But Has Failed to Substantiate Them**

SB1708 seeks in damages the loan's unpaid interest and principal, as well as attorneys' fees and costs incurred in "enforcing its rights under the note and mortgage." Pl.'s Mem. 13. Defendants do not oppose this request. *See* Defs.' Mem.

"Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). The Note here provides that "in the event the Lender retains legal counsel with respect to enforcement of this Note . . . the Borrower agree[s] to pay the Lender's attorneys' fees, costs and disbursements." Note 4. Similarly, the Mortgage provides that Allen "shall be responsible for [the] mortgagee's reasonable attorney fees for [sic] with respect to any enforcement of this agreement." Mortgage 4.

Courts have enforced "nearly identical fee-shifting

provisions," *Adar Bays, LLC v. 5Barz Int'l, Inc.*, No. 16-CV-6231, 2018 WL 3962831, at *15 (S.D.N.Y. Aug. 16, 2018), and the contractual language here leaves no doubt that plaintiff is entitled to attorneys' fees incurred in connection with this action. *See PositiveID*, 2019 WL 3437973, at *17. However, plaintiff has submitted none of the information necessary to assess its fees, such as contemporaneous time records. And a "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994). Accordingly, the Court denies plaintiff's request for attorneys' fees and costs, without prejudice to renew.

## IV. Conclusion

For the foregoing reasons, SB1708's motion for summary judgment is granted and defendants' cross-motion is denied. On or before November 12, 2026, SB1708 is directed to submit a proposed judgment of foreclosure providing for a sale of the property. The proposed judgment should also provide for the appointment of a referee to effectuate and disburse funds from the sale. By the same date, plaintiff is directed to renew its request for attorneys' fees and costs, if it elects to do so.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: October 12, 2026
Brooklyn, New York